IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>NAVY KAPELI, (01)<br><br>Defendant. | CR. NO. 16-00172 JMS (01)<br><br>ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE, ECF NOS. 77 & 81 |

### ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE, ECF NOS. 77 & 81

### I. INTRODUCTION

Defendant Navy Kapeli ("Defendant") moves, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), for compassionate release from Lompoc FCI ("Lompoc"), based on several pre-existing medical conditions and because he previously contracted COVID-19 while at Lompoc. The court determines that Defendant has failed to show extraordinary and compelling reasons to warrant release, and, even if he had, the court would deny the motion based on a consideration of the applicable 18 U.S.C. § 3553(a) factors. Thus, for the following reasons, the motion is DENIED.

## II. BACKGROUND

Defendant is a 33-year-old inmate incarcerated at Lompoc, and is scheduled for release from custody on October 18, 2025. *See* https://www.bop.gov/inmateloc/ (last visited September 23, 2020).

On October 19, 2016, Defendant pled guilty to four counts of an Indictment: 1) conspiracy to distribute, and possess with intent to distribute, 50 grams or more of methamphetamine (count 1); 2) distribution of 50 grams or more of methamphetamine (count 2); 3) distribution of 5 grams or more of methamphetamine (count 4); and 4) distribution of 5 grams or more of methamphetamine (count 5). *See* ECF Nos. 23 & 51. On February 9, 2017, Defendant was sentenced to a total term of 132 months imprisonment, and a total term of five years of supervised release. ECF Nos. 66 & 70.[1]

Defendant submitted a request for compassionate release to Lompoc's Warden on June 12, 2020. *See* ECF No. 77-14. As of July 24, 2020, the Warden had not responded to that request. *See* ECF No. 77 at PageID #325. On August 5, 2020, Defendant, acting pro se, filed the instant motion for compassionate release.

---

[1] Defendant's total offense level 33, Criminal History Category II, resulted in an advisory United States Sentencing Guideline range of 151 to 188 months incarceration. The court varied downward based on the 18 U.S.C. § 3553(a) factors and sentenced Defendant to a total term of 132 months. *See* ECF No. 71.

*Id.* at PageID #316.  The Office of the Federal Public Defender entered an appearance for Defendant and filed a Supplemental Memorandum in Support of the Motion for Compassionate Release on September 1, 2020.  *See* ECF Nos. 80, 81, & 83.  On September 15, 2020, the Government filed its Response, ECF No. 85, and on September 18, 2020, Defendant filed a Reply.  ECF No. 88.

The court decides the motion without a hearing pursuant to Local Rule 7.1(c).

### III.  DISCUSSION

**A.    Legal Standard**

Defendant moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, which provides as relevant:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction;
> . . . .

>and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

Thus, the court may reduce Defendant's sentence if: (1) Defendant has exhausted the required administrative remedies; (2) Defendant has shown that "extraordinary and compelling reasons" warrant the reduction; and (3) the reduction is consistent with applicable Sentencing Commission's policy statements. Here, both parties agree that Defendant has exhausted his administrative remedies. *See* ECF No. 81 at PageID #455-56 & ECF No. 85 at PageID #781.

The United States Sentencing Commission's policy statement, United States Sentencing Guideline ("Guideline") § 1B1.13, provides, as relevant to Defendant, that the court may grant a motion for compassionate release only if, after consideration of the applicable § 3553(a) factors, the court determines that extraordinary and compelling reasons exist to warrant a sentence reduction, the defendant is not a danger to another person or to the community, and a sentence reduction is consistent with the policy statement.

Guideline § 1B1.13 provides three specific examples of extraordinary and compelling reasons for compassionate release—the defendant's terminal medical condition, deterioration of health due to advanced age, and extenuating

family circumstances—along with a fourth, catch-all provision granting discretion to the Bureau of Prisons ("BOP") Director to determine whether other extraordinary and compelling reasons exist. *See* Guideline § 1B1.13 n.1(A)-(D). In a detailed analysis, this court previously determined that the "discretion to determine whether 'other' extraordinary and compelling reasons exist granted by [Guideline § 1B1.13 n.1(D)] to the BOP Director applies equally to the court when ruling on motions for compassionate release." *United States v. Hernandez*, 2020 WL 3453839, at *4 (D. Haw. June 24, 2020). The court incorporates that analysis here.

## B.     Extraordinary and Compelling Reasons Do Not Warrant Release

Defendant bears the burden to establish extraordinary and compelling reasons that warrant compassionate release. *See, e.g.*, *United States v. Bolden*, 2020 WL 4286820, at *3 (W.D. Wash. July 27, 2020); *United States v. Proudfoot*, 2020 WL 4284128, at *4 (D. Or. July 27, 2020). Here, Defendant contends that he should be released from custody because: (1) he is obese,[2] suffers from hypertension, and has a history of head trauma and intermittent chronic headaches;

---

[2] Defendant claims that he has a BMI of 31.3 based on his height of 5'7" and his self-reported weight of 200 pounds. *See* ECF No. 81 at PageID #456. The BOP medical records do not reflect Defendant's current weight, with the most recent entry on January 28, 2019 showing a weight of 180 pounds. *See* ECF No. 81-7 at PageID #694. Regardless, for purposes of this Motion, the court assumes that Defendant presently weighs 200 pounds, with a BMI of 31.3.

and (2) in April 2020 he contracted COVID-19 at Lompoc, is in "danger of reinfection," and the risk he faces must be viewed in light of the historical high number of COVID-19 infections at Lompoc. *See* ECF No. 81 at PageID #462-63, 475. Defendant also discusses several 18 U.S.C. § 3553(a) factors that support his motion. The court addresses each argument in turn.

The court agrees that Defendant has underlying medical conditions that place him or might place him at an increased risk for severe illness from COVID-19. According to the Centers for Disease Control and Prevention ("CDC"), individuals with "[o]besity (body mass index [BMI] 30 or higher)" fall into a high-risk category. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited September 23, 2020). Further, an individual with hypertension "might be at an increased risk." *Id*. In short, Defendant's pre-existing medical conditions place him at an increased risk should he again contract COVID-19.

Although Lompoc[3] certainly was a COVID-19 "hot spot" several months ago, the same does not appear to be true at the present time. BOP reports that out of a total of 974 inmates tested at Lompoc, 765 have tested positive for

---

[3] Lompoc presently houses 979 inmates. *See* bop.gov/locations/institutions/lof/ (last visited September 23, 2020).

COVID-19. *See* https://www.bop.gov/coronavirus/ (COVID-19 resource page) (last visited September 23, 2020). But BOP currently reports "confirmed active cases" are limited to no inmates and 3 staff members. *Id*. Thus, Lompoc simply does not pose the threat it did several months ago.[4]

That Defendant previously contracted COVID-19 and has since recovered counsels, albeit slightly, against a finding of extraordinary or compelling reasons to warrant granting the motion for compassionate release.[5] Although there are certainly reported cases of reinfection, much remains unknown about the risk of COVID-19 reinfection. As stated by the University of Maryland Medical System:

> There are still many unknowns when it comes to coronavirus immunity. At this time, there is currently no way to know if novel coronavirus (SARS-CoV-2) induces immunity and how long any immunity could last.
>
> Other types of coronaviruses, such as MERS, do induce

---

[4] In his Reply, Defendant argues that BOP is engaged in minimal testing at Lompoc, and this "call[s] into question the BOP's claim that there are no active inmate COVID-19 cases at the facility." ECF No. 88 at PageID #804. But even if true, the court is left with little to no information on the current state of COVID-19 within Lompoc. In other words, to argue that the reporting of active cases may be minimized by a lack of testing does not necessarily mean that Lompoc continues to have a significant number of cases, reported or not.

[5] The Defendant provides substantial evidence of the significant hardship he has endured as a result of his illness, including that his mother passed away while he was in quarantine. Further, he reports that "he still has chronic shortness of breath, tightness in his chest, and is easily fatigued." *See* ECF No. 81 at PageID #465. The court considers these facts, along with the totality of the circumstances, in ruling on Defendant's § 3582(c)(1)(A) motion.

> immunity, often for several years. Many hope that SARS-CoV-2 will behave similarly.
>
> Unfortunately, the data is not cut-and-dry. Most studies of immunity to coronaviruses, including SARS-CoV-2, focus on people who had severe disease and were hospitalized for their condition. There is significantly less data on the immune response in people who had mild symptoms or were asymptomatic.
>
> On the other hand, scientists have not been able to confirm any cases of reinfection after novel coronavirus recovery. Some anecdotal evidence has emerged in multiple countries. However, it's possible that these patients falsely tested negative for the virus after their symptoms subsided and continued to harbor the virus.
>
> All of these unknowns are why the Centers for Disease Control and Prevention and the World Health Organization currently state that there is no evidence to suggest novel coronavirus infection imparts immunity. More research needs to be done.

https://www.umms.org/coronavirus/what-to-know/diagnosis-symptoms/immunity

(last visited September 23, 2020). The CDC has made a similar statement:

> The immune response, including duration of immunity, to SARS-CoV-2 infection is not yet understood. Patients infected with other betacoronaviruses (MERS-CoV, HCoV-OC43), the genus to which SARS-CoV-2 belongs, are unlikely to be re-infected shortly (e.g., 3 months or more) after they recover. However, more information is needed to know whether similar immune protection will be observed for patients with COVID-19.

*See* https://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html (answering the question "Can people who recover from COVID-19 be re-infected with SARS-CoV-2?") last visited September 23, 2020). Some courts have concluded that the dangers associated with COVID-19 are not a ground for relief for someone who had the disease and recovered. *See e.g.*, *United States v. Risley*, 2020 WL 4748513, at *6-7 (E.D. Cal. Aug. 17, 2020); *United States v. Molley*, 2020 WL 3498482, at *2 (W.D. Wash. June 29, 2020); *United States v. Malecki*, 2020 WL 4013050, at *5 (W.D.N.Y. July 16, 2020); *United States v. Zubkov*, 2020 WL 2520696, at *3 (S.D.N.Y. May 18, 2020); *United States v. Hennessey*, 2020 WL 4209020, at *1 (D. Minn. July 22, 2020). Others have concluded an inmate recovered from COVID-19 may still be able to demonstrate extraordinary circumstances justifying release from custody. *See United States v. Yellin*, 2020 WL 3488738, at *3 (S.D. Cal. June 26, 2020); *United States v. Sholler*, 445 F. Supp. 3d 265, 271 (N.D. Cal. May 15, 2020).

        The court finds that based on the existing evidence, Defendant has failed to demonstrate that extraordinary and compelling reasons warrant compassionate release. Although Defendant's obesity places him at a higher risk for complications from COVID-19, and his hypertension might do so, he has

already contracted COVID-19 and is 33 years old.[6] Further, the number of COVID-19 cases at Lompoc appears to have dropped dramatically over the past few months. In short, although Defendant has demonstrated that his obesity and hypertension places him at a higher risk if he contracts COVID-19, he has failed to meet his burden to show extraordinary and compelling reasons warrant compassionate release.

### C. Section 3553(a) Factors

Even if Defendant had demonstrated that the required extraordinary and compelling reasons exist to justify compassionate release, the court would deny the motion based on a consideration of the § 3553(a) factors.

As relevant to this case, the § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant;[7] and (2) the need for the sentence imposed (a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for

---

[6] Several courts have determined that obesity—alone or paired with hypertension—does not by itself provide adequate grounds for compassionate release. *See, e.g.*, *United States v. Lavatai*, 2020 WL 4275258, at *1-2 (D. Haw. July 24, 2020); *United States v. Wilfred*, 2020 WL 4365531, at *5 (E.D. La. July 30, 2020); *United States v. Gordon*, 2020 WL 3971013, at *3 (E.D. Mich. July 14, 2020); *United States v. Whiteman*, 2020 WL 4284619, at *1 (E.D. Pa. July 27, 2020); *United States v. Takewell*, 2020 WL 4043060, at *3 (W.D. La. July 17, 2020); *United States v. Wax*, 2020 WL 3468219, at *2-3 (D.N.J. June 25, 2020).

[7] As part of the § 3553(a) analysis, the court considers Defendant's post-offense conduct, including his rehabilitation while in custody. *See Pepper v. United States*, 562 U.S. 476, 491 (2011).

the offense; (b) to afford adequate deterrence to criminal conduct; (c) to protect the public from further crimes of the defendant; and (d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.  18 U.S.C. § 3553(a)(1)-(2).  And under the parsimony clause, the court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth" in § 3553(a)(2).

Defendant trafficked in substantial quantities of methamphetamine. *See* Presentence Investigation Report ("PSR") ¶¶ 12-26, ECF No. 55 at PageID #147-50.  For example, Defendant told investigators that the most methamphetamine he had purchased from one supplier was two pounds, while the most he obtained from another was ten pounds.  *Id.* ¶¶ 21-22, ECF No. 55 at PageID #149.  Further, Defendant received a two-level upward adjustment under the Guidelines for his role in the offense.  *Id*. ¶ 44, ECF No. 55 at PageID #153.  Defendant has a 2006 conviction from Robbery in the Second Degree and a 2007 conviction for Abuse of a Family/Household Member.[8]  These prior convictions

---

[8] Defendant claims that he "successfully completed" terms of probation for these offenses.  ECF No. 81 at PageID #476.  Although he was eventually discharged from probation in both cases, Defendant violated the terms of his probation on multiple occasions prior to his discharge.  PSR ¶¶ 54-55, ECF No. 55 at PageID #155-56.  Further, Defendant violated his conditions of release in this case by leaving an inpatient drug treatment center prior to completing that program.  *See* ECF Nos. 32, 37, 39.

placed him at the time of sentencing in a Criminal History Category III. *Id.* ¶¶ 54-55, 58, ECF No. 55 at PageID #155-56.

Further, Defendant still has a significant portion of his sentence to serve—he is not scheduled for release from custody until October 18, 2025, over five years from now. *See* https://www.bop.gov/inmateloc/ (last visited September 23, 2020).[9]

In mitigation, Defendant points out that he has completed a number of programs while in custody, that he has maintained strong family and community support, and that he has a release plan that mitigates any danger that he might pose. ECF No. 81 at PageID # 476-77.

Considering all of the § 3553(a) factors, including the offense conduct, Defendant's criminal history, Defendant's post-offense conduct, and the time remaining on Defendant's sentence, reducing Defendant's sentence to time served would undermine the goals of sentencing set forth in § 3553(a)(2).

---

[9] When evaluating the § 3553(a) factors, courts consider the amount of time remaining on a defendant's sentence—whether short or long—in determining whether to grant compassionate release. *See e.g., United States v. Pawlowski*, 967 F.3d 327, 330-31 (3d Cir. 2020); *United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020); *United States v. Maka*, 2020 WL 2544408, at *4 (D. Haw. May 19, 2020); *United States v. Bogdanoff*, ___ F. Supp. 3d ___, 2020 WL 2307315, at *6 (E.D. Pa. May 8, 2020); *United States v. Moskop*, 2020 WL 1862636, at *1-2 (S.D. Ill. Apr. 14, 2020); *United States v. Farmer*, 2020 WL 4057550, at *2 (N.D. Ohio July 20, 2020); *United States v. Steffey*, 2020 WL 3840558, at *1 (D. Nev. July 8, 2020).

In sum, the court finds that Defendant has not established the requisite extraordinary and compelling reasons to warrant compassionate release, and, even if he did, the court would deny the motion based on the relevant § 3553(a) factors.

## IV. **CONCLUSION**

For the foregoing reasons, Defendant's motion for compassionate release, ECF Nos. 77 & 81, is DENIED.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, September 23, 2020.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*United States v. Kapeli*, Cr. No. 16-00172 JMS, Order Denying Defendant's Motion for Compassionate Release, ECF Nos. 77 & 81